DANIEL M. DIBBLE, Respondent, *v.* LE GRAND HATHAWAY, Appellant.

*" Branding," meaning of — chap. 559 of 1865.*

The word "brand," as used in chapter 559 of the Laws of 1865, forbidding the alteration or defacement of the brand required by that act to be placed by the manufacturers upon all butter-tubs, only means that the name and weight shall be marked upon it in a legible and distinct manner, *e. g.*, by a stencil plate and a chisel, it is not necessary that they be actually burned into the tubs. (LEARNED, P. J., dissenting.)

"To brand" has now become equivalent with "to stamp" and "to mark." (LEARNED, P. J., dissenting.)

APPEAL from a judgment of the County Court of Otsego county, in favor of the plaintiff, and from an order denying a motion for a new trial made upon a case and exceptions.

This action was brought to recover the amount of seven penalties for an alleged violation of an act of the legislature of the State of New York, entitled "An act in relation to the weights and marks on casks and packages containing butter," passed April 24, 1865.

The action was originally brought in a Justice's Court where a verdict was rendered for defendant. The plaintiff appealed to the County Court where a new trial was had before the court and a jury on the 4th day of December, 1873, and the jury brought in a verdict for the plaintiff for seventy-five dollars, the amount of three penalties.

The following is the statute under which the action is brought:

"Section 1. Every cooper or manufacturer of firkins, tubs or other vessels manufactured of wood for the package of butter shall brand in legible letters and characters upon every such firkin, tub or vessel made of wood, by him manufactured, his name, together with the actual and true weight of such firkin, tub or vessel, as aforesaid, rejecting fractions of a pound; and if any cooper or manufacturer shall dispose of any such firkin, tub or vessel without such brand, or shall falsely brand the same, he shall forfeit and pay to any person who shall prosecute for the same the sum of twenty-five dollars for every package disposed of without being marked, or with a false mark thereon, to be recovered by civil action in any court having jurisdiction of the person and subject-matter; one-half of such penalty to go to the superintendent of the poor of the county for the support of the poor in the county where such action shall be commenced.

"Sec. 2. It shall not be lawful for any person knowingly to sell and dispose of any butter packed or placed in any firkin, tub or vessel made of wood, and manufactured or made for such purposes, in this State, unless such firkin, tub or vessel shall be correctly branded in the manner provided in the first section of this act; and if any person shall disregard this provision, or shall alter or purposely deface the brand which may be made under the direction of this act, every such person shall forfeit and pay the sum of twenty-five dollars for every package so marked to such person as shall sue for the same, to be recovered by civil action in any court having jurisdiction of the person and subject-matter; one-half of such penalty to go to the superintendent of the poor of the county for the support of the poor of the county where such action shall be commenced. But nothing herein shall prevent the rebranding, according to correct weights, of any firkins, tubs or vessels, after their original contents shall have been used."

The complaint averred that the tubs were "properly branded," etc., and that the defendant "altered, changed and purposely defaced the said brand," etc., "by marking them at a less weight."

The evidence showed, and was wholly uncontradicted, that the only "brand" of the name was "Culver," with a "stencil plate," and the weight was "cut in" by a chisel or sharp instrument.

It was insisted by the defendant that such a marking was not a branding within the meaning of the statute.

*Bundy & Scrambling,* for the appellant. This being a penal statute it must be strictly construed in favor of the defendant. (*The American Life and Trust Co.* v. *Dobbin,* Lalor's Sup., 252; *Sprague* v. *Birdsall,* 2 Cow., 419; *Seward* v. *Beach,* 29 Barb., 235; *Doughty* v. *Brill,* 3 Keyes, 612; *The People, etc.,* v. *Schoonmaker,* 50 Barb., 44; *The People, etc.,* v. *The Supervisors of Ulster,* id., 83; *Chase* v. *New York Central Railroad Co.,* 26 N. Y., 523; *The Verona Central Cheese Co.* v. *Murtaugh,* 50 id., 314, 317; Potter's Dwarris on Statutes, 245.) This statute is imperative that the cooper, etc., "shall brand," etc., "his name, together with the actual and true weight," etc. As to the meaning of the word "brand" see Webster's Unabridged Dictionary. It is a well settled rule that if a statute direct a thing to be done in a certain or particular manner that thing cannot be done in any other manner. (*Cook* v. *Kelley,* 12 Abb., 35; 14 id., 466, where the same case is affirmed; *Adams* v. *Houghton,* 3 Abb. [N. S.], 46, 48.) If the manufacturer of the tubs failed to brand them strictly in accordance with the statute, then there can be no violation of the terms or provisions of the statute by changing such marks as he may have put on them, and consequently no penalty could be incurred. (*Campbell* v. *Beck,* 50 Ill., 171; cited in 1 Abb. U. S. Digest [N. S.], 560; *Greene* v. *The Mayor, etc.,* 1 Hun, 24; *The People ex rel. Bagley* v. *Greene,* id., 1.)

*E. Countryman,* for the respondent. The meaning of the word "brand" in the statute is to be ascertained from an examination of the policy of the statute and the mischiefs it was intended to remedy. Obviously the statute was designed to prevent fraud in overcharging the weight of butter contained in packages upon the sale and trans-

fer thereof in market. To accomplish this purpose it required a plain and permanent mark to be made on the packages by the manufacturer. It required the maker to ascertain and mark the weight, because he would have no interest in marking it incorrectly; and it required him to add his own name as a guaranty that the weight had been impartially determined. The word "brand" was used in describing the mark merely to indicate that it should be made in a durable and legible manner; and the phrase in section 1 ("shall brand in legible letters and characters") is, therefore, equivalent to a direction to "plainly mark" the name of the maker and the weight of the package. It is apparent that the word was used in the same sense in the statute. According to the ordinary rule of construction whatever is within the spirit and intent is within the statute, even if against the letter. (*White* v. *Wager*, 32 Barb., 253; *People* v. *Utica Insurance Company*, 15 Johns., 358; *Holmes* v. *Corley*, 31 N. Y., 290.) The title declares the act to relate to "weights and marks on casks and packages containing butter." And in each section of the statute the words "brand" and "mark" are used interchangeably in the same sense.

BOCKES, J.:

The court held, in effect, that the placing of the name of the manufacturer on the tubs in legible letters with a stencil plate, and indicating the weight by characters made with a chisel or other sharp instrument, was a *branding* within the meaning of the act giving the penalties recovered in this action. Such ruling presents the only question before us on this appeal.

It is a very familiar rule of law that penal statutes must be strictly construed; at the same time, they are to receive such construction as will render them effectual according to the intention of the legislature, when that result may be obtained without doing violence to the language employed. So it is the duty of courts so to construe statutes as to meet the mischief which the law was intended to remedy, and to advance the remedy, when this may be done without violating fundamental principles. (*Hart* v. *Cleis*, 8 Johns., 41–44.) It was also laid down in *Maillard* v. *Lawrence* (16 How. [U. S.], 251), that the popular or received import of words, furnishes the general rule for interpretation of public laws. And again it was

said in *McCluskey* v. *Cromwell* (11 N. Y., 593–601), that statutes should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction, for the purpose of either limiting or extending their operation. It is further laid down as a sound general principle in the exposition of statutes, that less regard be paid to the words that are used than to the policy which dictates the act. Then let us first examine the policy of the law now before us, by taking note of the mischief it was intended to remedy. It is entirely manifest that this act was designed to prevent fraud, in overestimating the weight of butter contained in packages upon its sale and transfer in market. So to effectuate this purpose, it was provided that the manufacturer of the tub, firkin or other vessel in which butter was to be packed, should ascertain and mark the weight thereon, and to give such mark verity, he was also required to add his name. The marking in a legible and distinct manner was what was desired and intended to be secured. The language is, that the manufacturer "shall brand in legible letters and characters upon every such firkin, tub," etc., his name and the weight of the vessel. The object to be attained would be perfectly answered by marking, as was done in this case, by stencil plate and chisel. To brand, in common parlance and according to common acceptance at this day, means to mark. Indeed, what was formerly generally done by a hot iron in the way of marking packages, is now done by the more convenient and very common use of the stencil plate. The purpose to be attained by the statute is equally well answered by such use. In referring to marks placed upon packages of merchandize, it is denominated branding quite as often as otherwise. To brand has become an equivalent expression with to stamp, and to mark. It is quite obvious that the word "brand," was used in this sense in the statute; certainly it was used in this sense within the spirit of the law. That this is so, is also made apparent on referring to the title of the act, as "an act in relation to the weights *and marks* on casks and packages containing butter."

The ruling of the court was correct as we think, and the judgment must be affirmed, with costs.

BOARDMAN, J., concurred.

LEARNED, P. J. (dissenting) :

Aside from the statute, the defendant had, of course, the right to deface any thing on his own tubs. The simple question then is, whether he violated the statute. And that depends on this : whether the painting of the maker's name on a tub and the cutting of marks thereon with a chisel are " branding."

The word " brand " itself shows its meaning. It is a piece of wood burning, or partly burnt — hence, a mark made by burning with a hot metal. Excluding the poetical and figurative use of the word, I find no definition which does not include the idea of burning. (See Webster's Dictionary and Richardson's Dictionary.)

In modern times the branding of articles has, to some extent, given place to the marking them by means of a stencil plate. But neither such marking, nor the cutting of characters with a chisel, is branding.

The statute is penal and " can not be extended by implication or construction to cases within the mischief, if they are not, at the same time within the terms of the act fairly and reasonably interpreted." ( *Verona Cheese Co.* v. *Murtaugh,* 50 N. Y., 317.)

It is quite possible that the legislature may have intended to require this peculiarly permanent kind of marking. If they had intended to permit other kinds, they would have said " mark or brand." This is the language which they did use in regard to bales of hay (Sess. Laws 1860, chap. 155.) And again, in chapter 415 (Sess. Laws 1877): " Shall distinctly and durably stamp, brand or mark upon every tub," etc. Thus they have showed their knowledge of the meaning of this word " brand." So the sealers of weights are to " seal and mark," thus being allowed to use any proper kind of marking. And the witness Culver, in this case, who made the tubs, testifies : " I did not *brand* them, either name or weight." From which it appears that he, too, understood that while a brand might be a mark, yet every mark was not a brand.

In my opinion then, the stenciled name was not a " brand," and more plainly the chisel cuts, supposed to indicate weight, were not " brands."

There is, I think, another defect. It appears that the only marking supposed to indicate weight was " with two parallel, perpendicular lines." It does not appear that there was any thing marked

on the tubs to show that these two lines indicated the weight. They might stand for pints, or pounds, or ounces, or the day of the month. The statute requires the branding with " the true and actual weight." Two parallel perpendicular lines, without any thing more, do not mean two or eleven pounds.

We have nothing to do with the defendant's supposed intent to defraud. He is civilly liable for any fraud. We have only to inquire whether he altered or defaced a " brand " made under the direction of that statute. I think that he did not, and that the judgment should be reversed.

Judgment affirmed, with costs.